THE STATE, NEW BRUNSWICK RUBBER COMPANY ET. AL., PROSECUTORS, v. THE COMMISSIONERS OF STREETS AND SEWERS IN THE CITY OF NEW BRUNSWICK.

1. An act of the legislature authorizing commissioners to assess a portion of the costs of a sewer upon lands drained thereby, to be apportioned in the manner deemed by them just and equitable, will not support any assessment made on such lands.

2. The report of commissioners must show on its face a compliance with all legal rules, the observance of which is necessary to constitute a valid assessment.

State, New Brunswick Rubber Co., pros., v. Com'rs of Streets and Sewers.

3. An assessment for such an improvement upon designated lands, in proportion to area or frontage, is not, as a method of assessment, supportable.

4. Prosecutor connecting his lands assessed with the sewer is not thereby estopped from questioning the legality of the assessment.

On *certiorari* to remove the assessment for construction of sewers in the city of New Brunswick.

Argued at June Term, 1875, before Justices SCUDDER and KNAPP.

For the plaintiffs, *Abel I. Smith* and *I. W. Scudder.*

For the defendants, *A. V. Schenck.*

The opinion of the court was delivered by

KNAPP, J. This writ, with twenty-one others issued out of this court, at the instance of eighty-three prosecutors, brings up the assessment of the " commissioners of streets and sewers in the city of New Brunswick," made against the lands of the prosecutors and others for the cost of building certain sewers in that part of the territorial limits of the city of New Brunswick, designated by the commissioners as " Sewer District No. 1."

By agreement of the parties, the return to one of said writs is to be taken as the return to all. The testimony taken in one case to be used in all, and the cases to be heard together. The same questions are involved in each case; they were presented to the court in one argument, and the decision in one case will control the others. The reasons, seventeen in number, assail the validity and binding force of the act authorizing the assessment, the principles upon which the assessment was made as reported by the commissioners, and the legality of the proceedings of the commissioners in laying the assessment.

The act of March 23d, 1871, (*Pamph. Laws* 795,) appoints certain persons to be called " Commissioners of Streets and

Sewers in the city of New Brunswick," and empower them to construct sewers, culverts and drains within the limits of said city, conformably to a general plan to be adopted by the said commissioners. And by the seventeenth section of that act it is provided, that upon the completion of any sewer, or the section of a sewer or drain, and other works connected therewith, the said commissioners "shall ascertain the whole cost thereof, and the size of all lots or separate parcels of ground drained thereby, and shall fix the amount to be paid for each in such proportions as may, in the judgment of said commissioners, be just and equitable." By the third section of the supplement to the above act, approved March 25th, 1874, (*Pamph. Laws* 479,) one-fourth of the whole cost of such sewer, or section of a sewer, is directed to be paid by the city of New Brunswick, and the remaining three-fourths is to be assessed in the manner provided for in the original act.

The commissioners, in the summer of 1871, entered upon the construction of sewers in "District No. 1" in said city, and contracts were awarded for the building of the same in three separate sections or divisions. On the 30th of April, 1874, the assessment for the cost of the sewers in the whole district was adopted, and notice of the assessment, as required by the act, was published on the 5th of May following. By that notice it appears that the aggregate assessment for the sewers in the district amounted to the sum of $298,141.03, one-quarter of which sum was directed by the commissioners to be paid by the city, and the remaining three-quarters was assessed upon the lots abutting on the streets through which the sewers were made, including the property belonging to the prosecutors. There was also assessed upon certain of the lots, the sum of $————, for lateral sewers. A copy of the newspaper in which the notice was published, made an exhibit in the cause, furnishes the only evidence before the court of the several amounts assessed, and what lots or parcels of land are assessed for the improvement.

The power to tax, for the expense of local public improvements, lands peculiarly benefited by such improvements, in

State, New Brunswick Rubber Co., pros., v. Com'rs of Streets and Sewers.

proportion to, and to the extent of the benefits received, when properly authorized by legislative enactment, is not drawn in question in these cases. The claim of the prosecutors is, that there is no law authorizing such tax in this case; that the act under which the commissioners have sought to impose this special assessment is invalid. If the authority exists in the commission to levy this special tax, it must, so far as respects the lots drained, be derived solely from the provisions of the seventeenth section of the act of 1871, above cited. It must be found in the terms of that section, or arise out of them by fair and reasonable implication. It is not sufficient that the legislative act merely declares that the cost, or a part of the cost of the improvement, shall be assessed upon the lots drained by the sewers to be built. It must, as well, establish some rule—some definite scheme—within constitutional limits, for the apportionment of the tax upon the lands on which such special burthen is imposed. An act of the legislature, directing a tax for a local improvement to be imposed upon particular lands, to be legal or effectual, must consist of something more than a mere authorization to assess a sum of money, the cost of a local improvement upon the designated property—the act must determine the mode of distributing the burthen; the property out of which the tax is to be made must be designated, and some certain standard of assessments established; it cannot properly be left by the legislature to the discretion of others to fix the method. This is substantially what was said by this court in *State, Gaines, pros.,* v. *Hudson County Avenue Commissioners,* 8 *Vroom* 12. To a like effect is the language of the Court of Errors in *State, Agens,* v. *City of Newark, Ib.* 415; the Chief Justice, in delivering the opinion of the court in that case, says: "The only safe rule is, that the statute authorizing the assessments shall itself fix either in terms or by fair implication the legal standard to which such assessments must be made to conform. In no other way can property be adequately protected." The assessment is, by the act, directed as to three-fourths of the

cost of the improvement, to be made upon the lands drained by the sewers, and the division of the burthen amongst the various lots and parcels answering to the designation, is left to the unlimited discretion of the commissioners, such distribution is not proportioned to, nor limited in extent to the benefits conferred ; it is not regulated by any defined rule or standard of assessment ; on the contrary, the act, if valid, has reposed in these commissioners authority to tax, specially designated property, for a large part of the cost of a public improvement, untrammeled by rule or principle, in the exercise of which authority they are permitted to divide this burthen, and impose it on the specified lands, in such manner as they, in their judgment, may think just and equitable. In *State* v. *Mayor, &c., of Paterson*, 8 *Vroom* 412, an assessment, certified to have been equitably made, was set aside as governed by no rule. It is not perceived how a legislative enactment, which provides no rule or standard for making an assessment for a public work, can have higher claim to validity. The want of proper limitation in this act, upon the exercise of the power to assess, cannot be supplied by intendment, as was done in the case of the village of Passaic charter, *Passaic* v. *State*, 8 *Vroom* 538 ; there is nothing in the act to support such an intendment ; construction cannot aid it ; nothing short of legislation can cure a defect so radical. Were it within the range of judicial power to aid by construction the act under which the commissioners proceeded, the assessment, as the return to the writ shows, is equally and fatally defective. However valid the law under which an assessment is made may be, the assessment must show on its face the principles on which it was made, and such principles must be accordant with legal requirements. The assessment, as returned, shows the amount assessed upon certain designated lots, and states, in the language of the act, that such amount was fixed and ascertained by the commissioners, as in their judgment, just and equitable ; it does not affirmatively appear, by the assessment as returned, that tax was confined to, or even imposed upon the property drained by the sewers, no allusion is made

to benefits conferred by the improvement upon the property assessed, nor is any intimation given that the assessment was distributed with any reference to benefit; so far as the return discloses, the assessments are purely arbitrary, and insupportable under the rules as settled in the courts of this state.

If resort be had to the testimony taken in the cases, it would seem that the scheme of assessment as presented by the engineer, and accepted and adopted as the return shows by the commisioners, assessed upon the property six cents and one mill for each square foot of surface of so much of each lot abutting on any street in which a sewer is built, as lies within fifty feet of the street line, and for the remainder of such lot, three cents and one mill per square foot. Whether or not this is by reason of the especial benefit to such property, or is in proportion to the benefits received by the lands assessed, and not in excess of such especial benefits, does not appear. It may, possibly, meet all these conditions, but the judgment of the commissioners as to whether it does or not, is absent, the testimony does not show it, and there is no presumption of law or fact that it is so.

An assessment for a street or sewer so apportioned on the lands that it happens to be coincident with the proportion of area of those lands, may, like an assessment on frontage, be according to the rule of benefits as established by law, and if commissioners, acting under that rule, so find and assess property, that is, if they, in assessing property specially benefited, under the proper rule for such assessments that the area or frontage of the assessable property corresponds with the benefits to such property, it would be a proper assessment, and sustainable in the absence of evidence to show an error in judgment; the mere fact that an assessment laid on property peculiarly benefited in proportion to benefits, and limited thereto, corresponds with area or frontage, will not overturn such assessment.

But area or frontage as a basis of assessment, other than for sidewalks, does not meet the legal rule upon which lands peculiarly benefited can be assessed for local improvements;

and so far as appears by the testimony, area was adopted by the commissioners as the measure of the assessment.

It seems to me to be quite clear that the act creating the commission and authorizing the sewers to be built, fails to provide, either in terms or by implication, a legal mode for the assessment in question.

That the commissioners, so far as appears by the return to the writs, have proceeded upon no recognized legal rule in making the assessment, nor indeed upon any rule.

And the testimony shows that the assessment, as actually made, left out of view the consideration of benefits, as their guiding rule.

The defendants in *certiorari* insist that, although that part of the act of 1871, under which the commissioners acted in making the assessment, may be within constitutional inhibition, yet the prosecutors having stood by and seen the work of constructing the sewers initiated and proceeded with to completion ; part of them having connected with the sewers, and some or one having purchased lands assessed after the assessment laid, and assumed payment of the assessment as part of the consideration, are not at liberty to avail themselves of the errors and defects existing, they having, by their acquiescence, waived all defects, whether constitutional or otherwise. That their laches, in applying for and prosecuting these writs, is such that the writs should be dismissed and the court refuse to entertain the cases. A number of authorities are cited in the brief of counsel to support this view.

It may fairly be held that the prosecutors are precluded from alleging any errors in the formal determination of the commissioners to construct the work, or their proceedings preliminary to the construction, or in the construction itself, so far as they were open and unconcealed.

The writs of *certiorari* bring up the assessments laid for paying for this work. The assessment was laid in April, 1874, after most of the connections had been made by the prosecutors with the sewers—the act directing one-fourth of

the cost to be placed on the city, was not passed until March, 1874—there seems to have been no unreasonable delay in applying for the writs, and no loss or embarrassment appears to have arisen to the city or the commissioners by reason of such delay as claimed; there seems nothing in the case to evince an intention at any time to acquiesce in or assent to the assessment. There is no doubt that a person may assent to surrender any of his rights of property, although such rights are secured by express constitutional provision, and the prosecutors here could have consented to and acquiesced in this assessment, but they have not done so, nor have they lost their right to be heard.

Connecting with the sewers cannot be regarded as an acquiescence on their part; their right so to connect is not made to rest on condition of paying the assessment; the consent of the commissioners and their own willingness, is all that is needed for that. It would be as reasonable to hold a man to the payment of an illegal assessment upon his lands for the paving of a street, because, after the assessment, he drove his carriage over the pavement, as to oblige him to pay an improper assessment for building a sewer, for the reason that he had connected the land so assessed with the sewer. The improvement is made for the public benefit, and in the use of it the prosecutors, as part of the public, are entitled to share.

A land-owner cannot be held to pay an improper assessment, because he has purchased the lands subject to such assessment, and assumed to pay it as part of the consideration. *State, Evans, pros., v. Mayor, &c., of Jersey City, 6 Vroom 381.*

All that the silence, acquiescence and acts of the prosecutors can bind to, is submission to a proper tax or assessment when legally imposed for the payment of their just proportion of the reasonable costs of the improvement.

Many other reasons were presented and urged on the argument for setting aside the assessment, but it is deemed unne-

cessary to consider them, as the assessment must be set aside for the reasons above stated.

The order will be, that the assessment, as to all the prosecutors in the several writs of *certiorari*, be set aside, and liberty is given on behalf of the defendants to apply, during the term, to set aside the whole assessment, if desired.