STATE, WILLIAM A. RIGHTER, PROSECUTOR, v. MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

1. Where an assessment was set aside because the provision in the charter of the city of Newark for making assessments was unconstitutional, a new assessment can be made.
2. An assessment for paving imposed upon the city more than one-half of the cost as the amount above the peculiar benefits to property. *Held*, that no property-owner assessed could complain of irregularity

in the assessment, or that some persons were improperly omitted, unless he showed either that he was assessed more than the peculiar benefits to his property, or that a proper assessment would place upon property all the cost of the improvement, and shift a portion of his assessment to other property.

On *certiorari.*

This writ brings up an assessment of the costs and expenses of paving a section of Mount Prospect avenue, from Bloomfield avenue to Hillside avenue, in the city of Newark, together with the ordinances and proceedings touching said assessments.

Argued at November Term, 1882, before Justices REED and MAGIE.

For the prosecutor, *A. Q. Keasbey.*

For the defendants, *H. Young.*

The opinion of the court was delivered by

REED, J.   The first reason filed in this *certiorari* proceeding is general, that the improvement was made without authority, and the first specific objection is found in the second reason, which states the position of the prosecutor as follows: That one assessment having been made in 1873, for the costs and expenses of said improvement, pursuant to the provisions of the statute in existence at the time when the said improvement was made, and that assessment having been set aside by this court as void, it is not competent to make a new assessment by other methods.

It is true that the charter of the city of Newark in existence at the time of the ordering and execution of this improvement, and the making of the original assessment, did not contain any provision for a constitutional method of assessment.   It provided for an assessment, but by reason of a failure to limit the amount which should be imposed upon

a land-owner to his actual benefits derived from the improvement, such provision was nugatory. Upon this ground the assessment was vacated by this court. The act of 1875, (*Pamph. L., p.* 251,) which provides that commissioners to assess damages and benefits in Newark shall be appointed by the Circuit Court, provides also (section 7) that in order to provide for the payment of the costs, damages and expenses of any improvement, or any part thereof, the assessment for which may have been or may be hereafter vacated or set aside, either in whole or in part, by the Supreme Court, an assessment shall be made and levied or collected in accordance with the provisions of this act. The commissioners who made this assessment were appointed by the Circuit Court of Essex county, and the power to make an assessment for this improvement, the former assessment for which this court had set aside, is, as is perceived, expressly given by the preceding section in the act of 1875. The point made by the counsel for the prosecutors is that the power to make an assessment was spent when the original assessment was made and set aside—that it is not competent for the legislature to impose an assessment now, when by the act under which the work was done no constitutional provision, which means that no provision at all, was made for an assessment.

The question which this contention raises is, however, not open to investigation as novel. In the case of *State* v. *Council of Newark,* 1 *Vroom* 303, an assessment was set aside for irregularities in passing the ordinance. An act (*Pamph. L.* 1868, *p.* 1002,) provided for a new assessment. The new assessment was brought into this court, and one of the reasons urged against its validity was that the legislature could not empower the city of Newark to make an assessment after this court had set aside another assessment for the same improvement. This objection was overruled by this court in the case of *State, ex rel. Doyle,* v. *Newark,* 5 *Vroom* 236. Justice Dalrimple said: " It must be borne in mind that the act does not revive or attempt to render valid the assessment which

this court has declared illegal and set aside. It simply orders a new and independent assessment to be made to collect moneys which the city had expended for the benefit of the prosecutor and others."

It is true that a distinction exists between the assessment in that case and in this, so far as that assessment was regarded by the court. The assessment was not vacated because there was no constitutional method of making any assessment, but on the ground that the proceedings taken to make it were irregular.

But the principle upon which the court placed its conclusion in that case applies to this, namely, the power of the legislature to order an assessment to compensate a municipality for money by it spent for the benefit of property.

But the features of the present case are found existing in the case of *State, Watrous, pros.*, v. *City of Elizabeth*, 11 *Vroom* 278. An assessment had been made which was void by reason of an unconstitutional provision in the charter. It was set aside. By a subsequent act the city acquired power to make a second assessment on the first being vacated for irregularity. It was held that the second assessment was valid. After that decision the present contention cannot be considered open for further consideration here.

The third reason raises an objection that the report should have set forth the fact that an assessment was made by the city surveyor in 1873, and that it had been set aside by this court. But the fact that such an assessment had been made and vacated is not a jurisdictional fact which must exist before any commissioners can be appointed, under the act of 1875, to make an assessment. The same power exists whether there has or has not been a previous assessment vacated, and therefore, upon the face of the report, no irregularity exists by reason of an omission of this statement.

The third reason is that there is no evidence in the report that the commissioners regarded the provisions of the act of 1876, entitled " An act concerning assessments in cities," (*Rev., p.* 713,) but that their assessments are made at a uni-

form rate per linear foot along the whole line of the street paved, without reference to the situation and use of the lots, and that each lot of the prosecutor is assessed for more than it is benefited.

The act of 1876 provides for an assessment upon the land and real estate benefited. The same shall be made and assessed upon the several lots or parcels of land benefited by said improvement in proportion to the benefit received by each one of said lots or parcels of land, and no lot or parcel shall be assessed more than it is benefited.

The report of the commissioners follows the language of this statute as well as the provision in the act of 1875, namely, that it was assessed upon all the lands peculiarly benefited thereby. Upon the face of the report, therefore, the facts upon which this reason is based do not exist, but the assertion is that every statutory requirement was executed by the commission. It requires clear proof to overcome the force of this report.

The length of the line upon the property fronting upon which this assessment was imposed is two thousand and forty-one feet. Of this distance the property of Mr. Righter fronts one thousand two hundred and eighty-one feet. The whole amount assessed is $42,165. Of this, $19,530 is assessed upon the property, and $22,635.18 upon the city of Newark. The assessments seem to have been made upon the notion that all the property was benefited equally, and that the benefit was proportionate to the frontage. So far as Mr. Righter's property is involved, I do know that this method was not as likely to reach the actual benefit as any other. At any rate, a frontage assessment is not necessarily invalid even under the constitutional rule.

But when it appears that property in present use, as the site of existing residences, is assessed at the same rate per foot as Mr. Righter's property, it seems clear that there is an inequality in the assessment. The property of the prosecutor is in use as a quarry. Its present value is largely derived from its present use.

It has a future use, when the stone shall be exhausted, as a site for buildings.   There is a belt of land along the street, unquarried, upon which buildings might now be erected, but it is apparent that while this land is needed as a place for the deposit of the quarried stone, it is not likely to be so used. It is equally apparent that from the general use of the tract, and from the fact that the lots would, after running back one hundred and twenty-five or one hundred and fifty feet, reach the deep pits left by the operators in the quarry, that its present value as building lots is not so great as it would otherwise be if no quarry existed.   Now, it cannot be said that a paved street is as valuable to a lot upon which no house is likely to be placed for years, as to a lot upon which a residence is already placed, nor to a lot with an insignificant house upon it as to one with a handsome structure.   From the fact that it appears that this property is assessed at the same rate as property in present use as habitations, or at present salable as sites for handsome residences, I think it results that there was inequality in the assessment.

But is the prosecutor in a position to complain?   Had the whole amount of the expense been placed upon property, this unequal assessment would place the prosecutor in a position to attack it successfully, because a proper re-adjustment would result in relieving him from a portion of his burden.   Where, however, a surplus representing the amount of the assessment above the benefits is placed upon the city, another question arises, and that is whether the inequality results from the insufficient assessment of the other property or the excessive assessment of the property of the prosecutor.

He cannot complain of the inadequate assessment of his neighbor unless it peculiarly affects him.   It could affect him only if by placing a proper assessment upon all the property that should be assessed, it would operate to place upon this property all the assessment made against the city, and also place upon this other property a part of the amount assessed against the prosecutor in order to make the assessment an equable one.   Now, while I think inequality appears, and

I may say here that I also think it appears that some unassessed properties which were clearly benefited should have been included, yet I do not see how an increase and extension of the assessment could wipe out the $22,635.18 assessment against the city. I do not think that this result from a proper assessment is contended for or could be reasonably apprehended. The prosecutor's right to complain must rest upon his contention that his property was assessed more than it was benefited. It was assessed about $5 per foot. I have already alluded to the general character of this property. Along Prospect avenue there is a tract of land which is not quarried. That tract is about one hundred and twenty-five feet wide, varying somewhat at different places. The interior of the lot is quarried.

The quarry will become exhausted, the pits filled up, and the whole tract will eventually be valuable building sites. There is no insurmountable objection to the use of the land along the street for residences now, but it is not adapted for the erection of fine houses because of the shallowness of the lots.

It is a matter of great difficulty to fix the increased value of such land arising from the presence of a paved instead of an unpaved street. It is difficult even to fix the increased value of an improved lot.

How soon these lots will be marketable is not evident. That they will be very valuable when that time arrives is apparent from the fine class of residences in the vicinity. The future possibilities of the tract in this respect are without doubt an important element in estimating the present value of the lots.

That a paved street is a matter of marketable value to such property is apparent. Mr. Righter himself admits that it is benefited, but he thinks not more than half the amount of the assessment. In the testimony a variety of opinions are expressed as to the effect of the paved street upon it. But there is very little in the testimony except the description of the ground itself and of the character of some of the sur-

rounding property which will aid us in arriving at the benefit —at how much more the property would bring with the pavement than without it. I incline to the opinion that the property is benefited to the amount of the assessment.

More than one-half of the cost of the improvement, as we have seen, is thrown upon the city. I think the commissioners acted with liberality toward the property-owners, and that the inequality in which the assessment was imposed resulted in placing too little on some rather than too much upon others.

The fifth reason, that the assessment does not extend to all the several lots or parcels of land benefited by the said improvement, has been alluded to already under the preceding reason. That such failure must result in an injury to the prosecutor, and that an assessment of such lands would not relieve him till the whole amount now assessed to the city was so imposed, is its answer.

The sixth reason, that the total amount assessed exceeds the aggregate amount of benefits, has been treated already in holding that the prosecutor's assessment did not exceed his benefits, and the other assessments, by reason of inequality, were still lower.

The seventh reason is that by an act of 1877 (*Rev.*, *p.* 1360,) it was provided that all re-assessments for street improvement should be made and completed within two years from the passage of said act, and that more than two years having expired, this assessment could not be made or confirmed. The act is one providing for the refunding of money which has been or may be paid for an assessment which is thereafter set aside. It provides that the money need not be refunded until such time as a re-assessment shall have been made, provided that such re-assessment, if the first is already set aside, shall be made within two years from the passage of the act. The act only affects the refunding of moneys which any property-owner has paid under the vacated assessment. He must wait until a new assessment is made, unless there is a delay of two years. If there is such delay he can then recover.

The eighth reason is not urged upon the argument.

The ninth reason is that the improvement, as made, was not as ordered by the ordinance. Instead of paving Mount Prospect avenue, from Bloomfield to Hillside avenues, only a portion of that section of the street was paved. It appears that previous to the levying of the present assessment, the part of this section which was originally left unpaved by the city in executing this improvement, was paved by the owners along the line of the street, so that at the time of making the assessment the work was executed in its entirety.

The case then presents this aspect, the improvement, so far as appears, is as intended by the ordinance. A part only has been done by the city, and a part by private parties. The assessment, instead of being for the cost of the whole, is for the cost of a part. Now, unless it appears that the method of assessment has been so altered by this as to throw a burden upon this prosecutor, to which, had the assessment been for the cost of the entire work, he would not have been subjected, I do not see how he can complain. Suppose, at the time of executing the work, private parties had stepped in and offered to do half, and to that extent relieve the city, would the city then be bound to do. or bound to advertise for proposals to do more than was sufficient to complete the work as provided for by the ordinance? And could the persons assessed complain because they were assessed for so much less than they otherwise would have been? Clearly not, unless the assessment relieved property-owners on account of their execution of the work in part as a private enterprise, from assessment, and by that conduct imposed upon others more than was equitable. And then, as I have already observed, it must appear that a proper assessment would relieve the prosecutor, and not merely the city, from a portion of the levy.

Another objection, which is not within any of the reasons, is that the report of the commissioners place, the assessment under the act of 1876, when it should have been under the law of 1875. *Pamph. L., p.* 249. If this objection could be

now entertained it would not aid the plaintiff, as the report sets out a substantial conformity to the requirements of both acts.

The assessment should be affirmed.