BENJAMIN H. THOMPSON ET AL., RESPONDENTS, v. THE CITY OF EAST ORANGE, APPELLANT.

Argued June 24, 1919—Decided March 8, 1920.

1. Where the Supreme Court sits as a reviewing tribunal, and the respondent there is appellant in the Court of Errors and Appeals, the only proper assignment of error in that court is, that the Supreme Court erred in giving judgment for the successful instead of the unsuccessful party; and under such an assignment the appellant in the Court of Errors and Appeals could advance any argument tending to show that the Supreme Court erred in giving judgment against him for any of the reasons upon which that tribunal rested its decision.
2. On the facts involved in the case *sub judice* the decision of this court in Ippolito *v.* Borough of Ridgefield, filed contemporaneously herewith, followed and applied.

---

On appeal from the Supreme Court.

For the appellant, *Jerome D. Gedney.*

For the respondents, *Borden D. Whiting.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The facts in this case are sufficiently stated in the *per curiam* filed in the Supreme Court, which reads as follows:

"The writ in this case is to review an assessment for benefits resulting from the repaving of Central avenue in the city of East Orange. The improvement was made pursuant to authority granted by the legislature in chapter 39 of the laws of 1915. *Pamph. L.* 1915, *p.* 75. This act provides that when a street, constructed or controlled by the board of freeholders, lies partly within a municipality, and when in the judgment of the governing body of such municipality it is proper to improve so much of the street as lies within its territory by paving or repaving the roadway or any part thereof with any form or kind of street pavement, and when the board of freeholders concur in such judgment, then it shall be lawful for the municipality and the county 'to enter into an agreement, to * * * determine what part or portion of the expense of making any such improvement shall be paid by and through each of the parties to such an agreement;' that after the execution of such agreement it shall be lawful for the freeholders to proceed to make the improvement in the same manner in which similar public works are undertaken, contracted for and executed, and on the completion thereof each party is to pay the part or portion of the expense assigned to it in said agreement. The expense of such improvement assigned to the municipality is to be assessed and collected in the same manner as the expense of other street improvements in such municipality.

"The agreement between the freeholders and the city in this case was entered into the 11th day of August, 1915.

"On September 15th, ordinance 27 of the city of East Orange of the year 1915 was approved. The ordinance provides that Central avenue shall be improved by the repaving

of the same with a bitulithic pavement laid by the board of chosen freeholders, or under its direction.

"Section 2 is as follows: 'That such proportion of the expense of such improvement as is represented by the cost of laying sixteen feet in width of such pavement from the Newark boundary to the center line of Harrison street, and six feet in width of such pavement from the center line of Harrison street to the Orange boundary line, together with the cost of street intersection where laid and a proportion of the expense of incidental advertising and inspection, all as set forth and provided in said contract, be deemed to be the actual cost and expense of such improvement with the city of East Orange.'

"Section 3 directs the city clerk, upon completion of the improvement, to deliver to the board of assessments a certified copy of the ordinance with a statement of the total amount expended by the city pursuant to said contract and ordinance.

"Assessments for street paving improvements in the city of East Orange at the time in question were made pursuant to section 41 of chapter 250 of the laws of 1908.

"The total cost of the improvement to the city is alleged in the certificate of the city engineer attached to the report of the board of assessments to be $38,947.32. To this certificate there has been added in the handwriting of the city auditor the words 'add interest at 5% to December 26th, 1917;' and in the same hand the alleged amount of such interest, namely, $3,203.41, has been added to the total cost as certified by the engineer, making a total figure of $42,150.73.

"The assessment was confirmed by the city council, and prosecutors, representing the greater part of the entire street frontage, took an appeal to the Circuit Court pursuant to the provisions of said section 41. *Pamph. L.* 1908, *p.* 486. The court affirmed the assessment.

"It is contended that the item of interest included in the assessment should be eliminated. We think in this instance that the interest item represents an obligation which the city

was obliged to sustain in the prosecution of this improvement, and that as such it became a necessary part of the cost and expense of the improvement within the meaning of section 2 of the ordinance.

"We think the assessment map which accompanied the report was a practical compliance with the provisions of the act. *Pamph. L.* 1908, *p.* 523. A map substantially similar was sustained under substantially a similar legislative requirement in *Boice* v. *Plainfield,* 38 *N. J. L.* 95.

"We do not think that the foot frontage rule was adopted here to the exclusion of benefits received. As an element indicating benefit, the frontage theory, when not made the exclusive theory, will not condemn an assessment. *Hunt* v. *Rahway,* 39 *N. J. L.* 646.

"Our only difficulty in the case is with the item for extra work. The fact that the city engineer and the contractor under the terms of the specifications agreed upon the items of extra work aggregating $8,300, cannot overcome the plain policy of the law as evinced in a legislative mandate (*Pamph. L.* 1912, *p.* 593), which provides substantially that no public body shall expend in excess of $500 by giving any order for the doing of any work or for the furnishing of any material or labor, &c., unless such public body shall first publicly advertise for bids therefor, &c.

"It must be manifest that the act thus forbidden to the public body cannot legally be performed by committing its exercise to the hands of municipal agents.

"We discover no laches in the case, and conclude that the assessment must be vacated. A reassessment will be ordered, in conformity with the statute."

This is an appeal by the city of East Orange from a judgment against it in the Supreme Court. The reasons for the judgment expressed in that court's *per curiam,* save one, make for an affirmance of the judgment there under review. On that one question only the Supreme Court concluded that there was reversible error, and that was that chapter 342 (*Pamph. L.* 1912, *p.* 593), which provides that whenever it shall be lawful for a public body to let contracts for doing work

or furnishing materials or labor, where the sum to be expended exceeds $500, the action of such public body in entering into any such contract shall be invalid unless there shall first be public advertising for bids and award made to the lowest responsible bidder, operate to render invalid the item of $8,300 allowed for extra work under the terms of the specifications. As a matter of fact the contract and specifications under which the work in question was done were not returned with the writ of *certiorari* into the Supreme Court and are not before us, although certain specifications are annexed to the agreement between the county and East Orange (presumably a copy of those annexed to the contract), and appear in the record. The contract was of course made with the freeholders, as the improvement was made by the county, but neither the county nor the contractor are parties to the writ, neither were before the Supreme Court, and they are not here. It may well be that this could be treated as a defect in the proceedings which would in and of itself work a reversal of the Supreme Court's decision. But as our view leads to a reversal on another point—the only one on which the Supreme Court reversed the Circuit Court—we are content to pass over the question of parties and defective record, and decide the meritorious question presented. Before proceeding to that it is to be observed that we assume that there was a provision in the contract for possible extra work and payment therefor. The Supreme Court clearly made this assumption and were justified in so doing, because, in the reasons for reversal in that court there is no statement that the contract lacked such provision—only that the cost of extra labor and materials was unlawfully included in the assessment, the same being ordered without due compliance with chapter 342 (*Pamph. L.* 1912, *supra*), and that the city did not agree to pay any part of the cost of extras. And in this court the prosecutors-respondents make no point to the effect that the contract did not contain a provision for extra work. It is here argued by them that the extra work was done without competitive bidding in violation of the statute, not that there was no authority in the contract for the doing of extra work.

Assuming as we do that there was provision in the contract for extras, the ordering of them and agreement on the price therefor, is a matter which must necessarily be committed to the proper agents who act for the municipality. The record in the *Ippolito case, infra,* shows that that was what was done there with reference to the extras. This is the only feasible *modus operandi* in such cases. This answers the Supreme Court's objection on that score.

In the opinion of this court in *Ippolito v. Borough of Ridgefield, ante p.* 97, filed contemporaneously with this, we held that there is nothing in chapter 342 (*Pamph. L.* 1912, *supra*), which forbids a provision for extra work in a contract let by public authorities; and that the insertion of such a provision is a protective measure to the public in the event of modification of the work occasioned by an unforeseen emergency, or as an incident to the work provided for in the original contract, and that the given municipality is always protected because whether this is so, or whether the extra work is the result of an effort to evade the statute, are questions of fact for the jury. Our views on that question in the Ippolito case are particularly apposite to the only question considered in the case *sub judice;* and for those reasons we are of opinion that the judgment of the Supreme Court herein should be reversed to the end that the judgment of the Circuit Court affirming the assessment involved, should be affirmed.

There is a matter in the record to which attention should be called. This appeal was from the Supreme Court sitting as a reviewing tribunal. There are six grounds of appeal filed in this court, when there should have been only one. In *State v. Verona,* 93 *N. J. L.* 389, we held that when the Supreme Court sits as a court of review (on appeal or on *certiorari,* &c.), a proper assignment of error is that it erred in giving judgment for the successful instead of the unsuccessful party, or that it so erred for one or more of the assignments of error or causes for reversal (grounds of appeal in sundry civil cases; reasons in *certiorari* cases) filed in that court and brought up with the record. That was a case where errors

had been assigned in the Supreme Court by the plaintiff in error, who was the plaintiff in error in this court, and we therefore held that he could either have assigned as error in this court that the court below erred in giving judgment for the state instead of for himself, or that it so erred for one or more of the assignments of error in the court below. But in the case *sub judice* the appellant was the respondent in the court below and assigned no errors, or rather grounds of appeal, this case being a civil one. Therefore, the only proper assignment of error in this court would have been that the Supreme Court erred in giving judgment for the prosecutors-respondents instead of for the defendant-appellant. Under such an assignment the appellant here could advance any argument tending to show that the Supreme Court erred in giving judgment against it for any of the reasons upon which that tribunal rested its decision.

Let the judgment under review be reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 13.