CITED in *Morgan* v. *Rose*, 7 *C. E. Gr.* 588.

---

THE STATE (A. MANN, PROSECUTOR,) v..THE MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. The Mayor and Common Council of Jersey City have power to fill in streets in the city ; and an ordinance directing a specified portion of a street to be filled in to the established grade, is sufficiently definite, and the consent of the owners of a majority of the lots to be assessed, is not necessary for such purpose. And one part of an ordinance may be invalid and another part valid.

2. If the oath of a commissioner for assessment be substantially correct, it is sufficient.

3. Under the charter of Jersey City, requiring each lot or parcel to be assessed separately, sixteen lots of one person lying together may be assessed as one parcel.

4. Commissioners appointed to ascertain and assess the expenses of an improvement, must examine the work and property assessed, in person, and exercise their own judgment. It is not sufficient that they sign an estimate and report made out by a third person.

5. The owners of land to be assessed for city improvements are entitled to a reasonable notice of the meeting of commissioners for assessing the expenses of the improvements, and a right to be heard, even where the act authorizing the improvement is silent as to such notice. It is required upon settled principles of law.

6. It is not lawful, under the charter of Jersey City, to assess the expenses of filling in a street, by dividing it among the owners of lots along the street, in proportion to their front upon the same, without regarding the amount required in front of each lot, or such part as had previously been done by the owner at his own expense.

---

This was a *certiorari* removing the proceedings of the mayor and common council of Jersey City in filling up Bright street, a public street in that city, to the established grade, and assessing the expenses of the improvements upon the

lands benefited by it. The facts upon which the objections to the proceedings were founded, are stated in the opinion of Judge ELMER, before whom the cause was argued upon the reasons assigned for setting aside the proceedings.

Mr. *I. W. Scudder* for plaintiff.

Mr. *Zabriskie* for defendants.

ELMER, J. This *certiorari* brings up the proceedings of the mayor and common council of Jersey City, in assessing upon the real estate of the prosecutor, a portion of the expenses alleged to have been incurred in filling up Bright street from Grove to Jersey streets in said city, pursuant to the power given by the charter in *Title VI, SS. 52 to 62, Acts of* 1851, *p.* 414. The ordinance, which appears to have been regularly introduced and passed, is: "That Bright street, from Grove to Jersey streets, be regulated, filled to the established grade, and the south side, between Barrow and Jersey streets, be flagged four feet wide, and bridge stone cross walks laid across Barrow street."

It is now objected, on behalf of the prosecutor, that the ordinance itself is illegal and void. First, it is insisted that the charter gives no power to the council to fill up a street. In my opinion, this power is given in express terms. The powers of the council, in section forty-two, paragraph six, are declared to be, to make and lay out streets, and regulate and govern the leveling, pitching, and constructing them; and in section fifty-two, it is declared that the expense for improvements in opening, altering, widening, filling up, &c., streets, shall be assessed upon and paid by the lands and real estate benefited by the same.

Another objection to the ordinance is that it is too vague and indefinite. But this objection does not seem to me to be well taken. It does not specify when or how the street was to be filled up, but that was not necessary. The charter prescribes the mode of proceeding, and it was not until the work was done that the property could be assessed to defray the expense. The street is sufficiently described, and the

points between which the filling up was to be done; and the height of filling required is specified, by reference to a grade before established, and well known. The property to be assessed was not required to be specified; that was to be ascertained by subsequent proceedings, in the manner prescribed by the charter.

Again it is objected to the ordinance that it does not appear that the consent of the owners of a majority of the lots to be assessed, was first obtained, and that without such consent, the ordinance to pave or flag a part of the street was not valid. But the assessment brought up in this case was not for the expense of paving or flagging, no part of the property assessed being benefited by that, but for the expense of filling, as to which no consent was necessary. It is no objection to that part of the ordinance which was duly passed, that another part of it, in no wise affecting the property assessed, may have been invalid. I am, therefore, of opinion that the ordinance itself, so far as it affects the assessment in question, is in accordance with the charter, and must be sustained.

Several objections are made to the proceedings subsequent to the making of the ordinance, which I shall proceed to consider. First, it is insisted that the commissioners were not duly sworn. The charter prescribes that they shall take an oath, faithfully, honestly, and impartially to perform the duties required of them. The oath actually subscribed and taken by each of them, is: that I will faithfully, honestly, and impartially perform the duties required of me as commissioner of assessments, to assess the expenses of filling Bright street, between Grove street and Jersey avenue. And the objection is that the latter part of it limits the oath to the special duty of assessing the expenses, to the exclusion of the duty of making a proper report and map. It is obvious, however, that the words objected to are a mere description of the commissioner, which it was necessary to embrace in some part of the oath. He was a commissioner to assess the expenses of filling Bright street, and of nothing else. All his duties appertaining to that office are performed in making

the assessment. This case differs entirely from that of a surveyor, sworn as the surveyor of a particular township, which was held to be a fatal variance on the ground that although elected by that township, he was legally a surveyor of the whole county. 1 *Green* 10.

Secondly, it is objected to the assessment, that the prosecutor's sixteen lots are assessed in gross, and not separately. The words of the charter are that the commissioners shall determine what proportion of the expenses shall be assessed to each separate parcel or lot of land. It appears by the map, which is by law a part of the return, that these lots are all of similar dimensions, fronting on Bright street, and all adjoining, so as to make one " separate parcel." They are therefore legally so assessed.

The third and fourth objections to the assessment, which I shall consider together, are that the commissioners did not in fact examine and determine the expenses incurred, and what proportion thereof should be assessed to each separate parcel or lot; and that no notice of their meeting to make such assessment was given to the owners. This court held in the case of *The State* v. *Coleman*, 1 *Green* 98, that where commissioners were appointed to run, survey, mark, and ascertain a county line, it was necessary they should all be present and inspect the performance of the work, and exercise their collective judgment, and that one could not act alone. The principle of that case is applicable to this. The commissioners are expressly required to examine into the whole matter and determine and report. The judgment to be reported must be their own judgment, founded on facts obvious to their senses, or ascertained by inquiry and examination. Although not authorized to call witnesses before them and examine them upon oath, it was clearly their duty, like the surveyors or freeholders who assess the damages an owner has sustained by laying out a road through his land, to examine the premises and the work actually performed, and to avail themselves of every accessible means of information calculated to aid them in making up their joint determination. They are to ascertain the actual expense in-

curred, and not merely what the city may have paid. It is obviously proper that they should hear the parties interested ; and I think such parties, if accessible by reasonable diligence, are entitled to notice of the time and place of their meeting to fulfil their duties. This is not in terms required by the act, but it is a general principle of law, of too much importance to be overlooked, that no person shall be bound by proceedings of a judicial nature, affecting his person or property, without having an opportunity of being heard. 15 *Wend. R.* 375 ; *Young* v. *Overseers of Hardiston,* 2 *Green* 520 ; *N. J. Turnpike Co.* v. *Hall,* 2 *Harr.* 337 ; *State* v. *Freeholders of Hudson, in Error,* 4 *Zab.* Where the statute provides for a notice by advertisement or otherwise, such a notice is sufficient. The charter in this case requires that the proposition to make the improvements shall be advertised, so that parties interested may, if they desire, be heard on that question, before the council or their appropriate committee, and such an advertisement is due notice to all persons of the proceedings to pass the ordinance. But the assessment of the real estate for the expenses incurred, is a different matter, in regard to which no advertisement or other mode of notice is prescribed, so that the general rule of law requiring reasonable notice, must be applied. The charter allows no appeal from the determination and report of the commissioners, but declares that the same when filed and recorded, shall constitute a lien on the property assessed, for the amount of such assessment. Before the land can be sold, the council must limit and appoint the time for the payment of the assessment, and must expressly order a sale, but no formal confirmation of the report is required. The council, it appears, appointed a time for confirming it, and caused an advertisement to be published of the time and place of their meeting to receive and consider objections to it, as it was perfectly right and proper they should do ; but this in no wise dispensed with the necessity of giving an opportunity to the owners to be heard before the commissioners, whose duty it was to hear and determine what the assessment should be.

It appears by the depositions that the commissioners not only proceeded to make the assessment without giving the owners of the property any opportunity to be heard, but that in fact they took no steps to ascertain what the actual expenses were, and never even examined together the work done or the property to be assessed. They simply met at the clerk's office and approved a report prepared for them by the city surveyor. The assessment and report itself is radically defective, and shows on its face that the assessment was made upon principles contrary to law and to the provisions of the charter. Instead of setting forth that they had ascertained and assessed the expenses of the improvement, had examined the whole matter, and determined what real estate ought to be assessed for such improvement, and what proportion of such expenses should be assessed to each separate parcel of land, as the law requires, it purports to be an " assessment for earth filling on Bright street," &c., signed J. Bevan, city surveyor, and approved by the three persons named as commissioners. It contains a statement of the contractor's account for the expense, and a calculation apportioning the amount to the several lots according to the number of feet they measured on the street. This may or may not be correct, but it does not appear that they ascertained and determined it to be correct by a proper examination of the facts; and it is evident from the testimony that they did not. If, in point of fact, the parcel or lot of the prosecutor, or of any other owner, required less filling up in front than other parcels or lots, as it would seem was the case, this circumstance should have been considered by the commissioners, and given its due weight; and especially if any owner had at his own expense, with the actual or implied consent of the proper officers, filled up the street, he was entitled to a proper allowance. A mere calculation of the proportion of the sum allowed to the contractor, whether he had done his work in whole or in part, or not at all, to each lot according to its size, which is all the commissioners did, was a very different thing from the assessment they were appointed to make. They were required to be, and doubtless

were, impartial, disinterested men, and were sworn faithfully, honestly, and impartially to perform the duties required of them, not merely that they might verify a calculation of the city surveyor or any other officer, but that they might ascertain the actual expenses incurred, by examining into the whole matter, and by information derived from the documents and other sources; and determine the proportion thereof that ought to be assessed to each parcel or lot according to the actual benefit received by such parcel or lot in the same manner. If any one or more of the parcels or lots was so circumstanced, in consequence of having been before filled up or for any other reason, that it received less benefit from the expense actually incurred by the city, it should have been assessed accordingly. An assessment made in any other way was made upon principles contrary to law.

I am, therefore, of opinion that the assessment must be set aside, and new commissioners appointed, as is required by the fifty-seventh section of the charter.