Monmouth County Circuit Court.

JAMES D. CARTON, APPELLANT, v. BOROUGH OF NEP-
TUNE CITY, IN THE COUNTY OF MONMOUTH, A
MUNICIPAL CORPORATION, DEFENDANT.

Decided December 20, 1937.

For the appellant, *Durand, Ivins & Carton* (*Robert V. Carton*).

For the defendant, *Joseph R. Megill.*

Lawrence, J.   This is an appeal from assessments for benefits imposed on lands of appellant in the borough of Neptune City, in this county, of the proportionate cost of a sanitary sewer system constructed by the authorities there, under the provisions of article XX of the act concerning municipalities. *Pamph. L.* 1917, *ch.* 152, *p.* 319; 2 *Cum. Supp. Comp. Stat., pp.* 2071, 2194, §§ 136-2001 *et seq.*   The construction, excepting as to laterals on vacant lots and tracts, was completed in 1929, when the assessments here involved were laid.   The commissioners appointed to make them reported to the mayor and council of the borough and the municipal body approved and confirmed the report on May 22d, 1929.   Appellant, whose lands were affected, gave the statutory notice of appeal, as required by *Pamph. L.* 1925,

ch. 71, p. 237; Supp. Comp. Stat. p. 1135, § 136-2042, and the appeal was duly perfected. While the hearing was not brought on until the present time, as defendant did not at any time seek to have the appeal dismissed for lack of prosecution, and no question has been raised in that respect, counsel for the parties apparently acquiescing in the delay, it is assumed that a meritorious ground was recognized as supporting the appeal, which in fact appears to be the case.

Appellant is, and was in 1929, the owner of twenty-four acres of farm land in the borough, on a part of which stand a large dwelling house, a small bungalow, and some outbuildings. The property was at the time of the construction of the sewer system and still is occupied by him and his family as a residence and the dwellings were connected with the new sewer by five hundred feet of main laid at his own expense. That part is not consequently included in the appeal. The remainder, spoken of as open fields or farm land, has a frontage of one thousand four hundred and fifty feet on Sylvania avenue, a public street of the borough, and extends in a generally southerly direction to the water line of Shark river. A private road known as Riverview avenue runs from Sylvania avenue through a part of the westerly side of the tract, giving access to one or more dwellings on lots not owned by appellant, although he has three hundred and ninety feet on the north side of this avenue and two hundred and forty feet on the south side. A small lot on the south side of West Sylvania avenue not connected with the main tract is also here involved. This is irregular in shape, having a depth of about seventy feet, with a width of ninety-two feet in the rear and at a point forty feet from the street runs off at an angle to the street line. It has approximately one hundred and thirty-five feet of street frontage, without, as indicated, a corresponding depth.

The territory of the borough is, and was in 1929, largely developed and built upon, but there are and were many vacant lots and tracts such as the property of appellant, which at the time of the construction of the sewer system and the assessments made of the cost derived no immediate advantage from it, excepting as the market value may have been

increased by the laying of sewer mains in the adjacent streets upon which they fronted. The system was constructed as a local improvement, under the statute defined as one, the cost of which, or a portion thereof, may be assessed on lands in the vicinity benefited thereby; but the assessments are required to be levied in each case as near as may be in proportion to the peculiar benefit, advantage or increase in value which the respective lots and parcels of land and real estate shall be deemed to receive by reason of the improvement, and in no case may the assessment on any parcel of land exceed in amount such peculiar benefit, advantage or increase in value. If the assessments so made do not equal the cost, then the excess must be raised by general taxation or in some other legally permissible way. *Passaic* v. *Delaware, Lackawanna and Western Railroad Co.*, 37 *N. J. L.* 538, 540.

In making the assessments here considered the report of the commissioners discloses that they first determined the available drainage area in the borough to be served by the new system and laid off the territory comprehended into units of one hundred square feet, and, whether built upon or not, assessed each lot or parcel within the area on the uniform basis of the number of such units contained therein at a rate of seventy-four cents and one mill, without regard to the peculiar benefit, advantage, or increase in value. The rate was obtained, it appears, by finding the total cost of the improvement to have been $206,023.49, from which was deducted the sum of $6,165.33 for house connections and miscellaneous expenses, leaving the net cost $199,858.16. Of this amount $101,846.17 was apportioned on the indicated unit basis to all the lots and parcels in the drainage area on the theory of a special benefit received from the installation of the treatment plant, pumping station, land occupied, rights of way, outfall sewer, chlorinating equipment, and other related items. The remainder of the cost—$98,011.99—was reduced to a base rate of $1.553 for each lineal foot of land fronting on the streets and avenues where sewer mains, as a part of the new system, were laid. Here again no consideration appears to have been given to the peculiar benefit, advantage or increase in value of the individual properties affected.

The result was that appellant's lands were assessed as follows: one thousand four hundred and fifty feet fronting on Sylvania avenue at the rate of $1.553 per foot, $2,253.09. In addition this tract of farm land, of which sixteen acres were found to be within the drainage area, was also assessed on the unit basis at the rate of seventy-four cents and one mill, calculated evidently on the number of one hundred square feet units ascertained to be therein, and amounting to $4,487.27. On the land north of Riverview avenue, down which a sewer main had been laid, the assessment of three hundred and ninety feet at the lineal foot rate is $605.67, and for the two hundred and forty feet on the south side, at the same rate, is $372.72. As to the lot on the south side of West Sylvania avenue, the assessment is $261.40, apparently based on a frontage of one hundred and thirty-five feet at the lineal foot rate and also the unit rate as a full sized lot.

'The aggregate of the assessments against appellant's land was thus fixed at $7,980.15, and it may be observed that there was evidence at the hearing of the appeal that the market value of the tract of twenty-four acres, sixteen of which were found to be within the drainage area subject to assessment, did not exceed $18,000, one or more of the experts testifying that the proper figure was about $12,000. Compared with the amount of the assessment imposed on this tract, which is $6,740.36, the suggestion that it approaches confiscation of a substantial part of the value has at least a semblance of truth. That the assessments far exceed the peculiar benefit. advantage or increse in value of the land resulting from the improvement seems clear. That they cannot be sustained appears equally so.

It was sought in behalf of the borough at the hearing to support the assessments by showing that the part of the property within the drainage area had a potential value for development and a plan was produced, made by an engineer, of a tentative division into streets and lots, and it was urged that when such a development actually occurred in the future the assessments would be found equitable and just. No such development, however, had taken place at the time they were imposed, nor was it in contemplation, it appears, and nothing

of the kind has taken place since to justify the method. When it does, doubtless a proper assessment can be made when the sewer system, with the laterals, is actually installed there or extended to the territory, but not until then. (See article XX, sections 20, 21, 24 and 25, *supra*.)

In *Kellogg* v. *Elizabeth*, 40 *N. J. L.* 274, 276, it was said that the special and peculiar benefit which will legalize an assessment for an improvement must be a present benefit immediately accruing from its construction, and that land owners cannot be assessed for intended benefits which may never be realized, for the reason that mere speculative benefits are not, in reality, benefits.

The method pursued by the commissioners, both in respect to the lineal foot rate and the unit area basis ignored or did not take into consideration the peculiar benefit, advantage or increase in value of the land, and was not in accordance with the injunction and requirement of the statute, in particular, article XX, section 24. The method will be found disapproved in such cases as *State* v. *Hudson City*, 29 *N. J. L.* 115, 116; *Hampson* v. *Paterson*, 36 *Id.* 159, 164, and in *New Brunswick Rubber Co.* v. *New Brunswick*, 38 *Id.* 190, 195. Other cases may be cited to the same effect, one or more of them indicating that the lineal foot rate may be used if the assessment properly reflects the peculiar benefit, advantage or increase in value of the land, resulting from the improvement. But that is not the case here. The assessments are undoubtedly excessive and were determined as a mere matter of arithmetic, by apportioning the cost of the improvement, with the stated deduction, to a drainage area arbitrarily divided into one hundred square feet units, and the use of a lineal foot rate, without actual regard to location or difference in value of the land included therein or the peculiar benefit or advantage accruing to individual lots or parcels.

The conclusion is that the appeal must be sustained and the assessments corrected. There was credible evidence at the hearing that appellant's land had increased in value as the result of the installation of the new sewer system. As, for example, the tract of farm land, was shown to have been

benefited in that regard to the extent of one dollar a front foot, while the lot on the south side of West Sylvania avenue had increased in value to the extent of $100. The evidence likewise indicated that a just and equitable assessment on the footage on Riverview avenue at the rate of one dollar per foot would have been justified. The unit area assessment on the sixteen acres of farm land, as fixed by the commissioners, amounting to the sum of $4,487.27 should be canceled. As corrected the assessments will thus stand: one thousand four hundred and fifty feet on Sylvania avenue, $1,450; three hundred and ninety feet on the north side of Riverview avenue, $390; two hundred and forty feet on the south side, $240; and as against the lot on the south side of West Sylvania avenue, $100. An order may be submitted accordingly, to the end that the clerk and collector of taxes of the borough may receive the notice required by the statute. No costs will be allowed.