ROBERT HOWARTH, *ET AL.*, PLAINTIFFS-APPELLANTS, v. BOROUGH OF WENONAH, ETC., *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided April 14, 1961.

*Messrs. Crispin, Caulfield & Zamal,* attorney for plaintiffs (*Mr. Laurence L. Crispin,* appearing).

*Mr. Robert C. Hendrickson,* attorney for defendants (*Mr. R. Cooper Brown,* of counsel).

SCHALICK, J. S. C. A local improvement ordinance was adopted by the Mayor and Council of the Borough of Wenonah and sewer facilities were constructed under its authority and completed in 1959. The plaintiffs, 21 in number, appeal from the assessments made against their properties for a part of the cost of the local improvement.

The assessments were made by the members of the Wenonah Board of Assessment, and the assessments were confirmed by the mayor and council of said borough on June 25, 1959.

The question involved is the compliance with the statute *R. S.* 40:56–27, which provides:

"All assessments levied under this chapter for any local improvement shall in each case be as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value which the respective lots and parcels of real estate shall be deemed to receive by reason of such improvement."

It is conceded that the properties of each of the applicants was benefited, but the disagreement is the amount of the increase of value as a result of the improvement. The accuracy of the methods in arriving at such increase is in sharp dispute.

It was stipulated that the Borough of Wenonah, prior to this assessment, had and still has a restrictive ordinance requiring a minimum of 75-foot frontage for a dwelling unit. This restriction is pertinent in reference to the use of the plaintiffs' parcels of land.

The borough derives its authority from *N. J. S. A.* 40:56–1 *et seq.* It is stipulated that all ordinances and subsequent proceedings meet the requirements of the statutes and the appeals are properly before this court pursuant to *N. J. S. A.* 40:56–54.

The proofs show that the assessments were made on the basis of the area of each parcel, limiting the depth to 150

feet. The square footage of each lot was computed, then the square footage of all lots was totaled, and that total was related to the total cost to ascertain the required cost per square foot, which was $.045362624 per square foot. To illustrate, many of the lots were 75 feet front and 150 feet deep, or 11,250 square feet, which was multiplied by $.045362624 as a cost per square foot to arrive at an assessment of $510.33 for each of such lots. Twenty-seven lots, 75 feet by 150 feet, are so assessed, but in some instances two or more of such size lots form an individual property of one of the appellants. In other property assessments one or more lots of that size with another irregular parcel form a property. The method of assessment as heretofore outlined never varies on the schedule of assessments. When the boundary measurements were not regular, then an improvised method of computation was used, such as P–15, Maddox, $\left( \dfrac{108.15' + 165.72'}{2} \right) \times 150'$, for a total of 20540.2 square feet which, when multiplied by the same cost per square foot, resulted in an assessment of $931.72. In reference to the P–20, the Howarth property which embraced several lots 75' x 150' as well as two irregular lots, the latter were treated in this fashion: as to Lot 2, Block 9, the benefited lot dimension was (15.39 x 150) + $\left( \dfrac{150 + 138.73}{2} \right) \times 59.61$, resulting in a benefited lot area of 10914.10 square feet and an assessment of $495.07. Adjacent to this was a 5-foot strip which was set out $\left( \dfrac{137.61 + 138.73}{2} \right) \times 5$, giving a total of 690.85 and an assessment of $31.33. Both of these parcels were part of a property having other 75' $\times$ 150' lots which were similarly computed.

The expert witnesses for the defendants used either the square foot or front foot formula in making their determination of the increase of benefit for each of the properties,

and approximated or exceeded the amount of the assessments. The expert witnesses for the plaintiffs based their opinions on the enhancement of value to each property, reasoning with other factors that the benefits attach to each property only to the extent of the number of houses which can be legally built on a tract, and if there can be only one sewer connection, then the benefit is so limited. They also took into account the borough ordinance requiring 75-foot frontage for each dwelling unit, and if a contiguous parcel was a part of the main parcel on which the dwelling was located and not large enough for use for another dwelling, then the additional lot was not further benefited by the sewer connection. If such parcel was large enough for another house, an enhancement value was added. This is an area limited to residences.

The witness Baum, one of the assessors and the only one to testify, admitted that the board of assessment calculated the total square feet of each affected property, eliminating a portion of the depth of unusually deep lots, and that the total square feet in all areas was divided into the total amount of money which was itemized on assessable items to arrive at the multiple of $.045362624 per square foot. Then the square footage of each parcel was multiplied by that figure to arrive at the assessment. This witness, when asked whether they allocated the costs to the area rather than determining the benefit to the lots, answered in the affirmative. He expressed a belief that their formula, with their knowledge of land values in the borough, rightly revealed the benefit, advantage and increase of value attaching to each property as a result of the improvement.

All parties agreed that the added value to the land was the only concern, and this was not affected by the value of the improvements. The court in *Cirasella v. Village of South Orange*, 57 N. J. Super. 522 (*App. Div.* 1959), states that " " * * * all the cases are quite clear in standing for the proposition that the basis for such an assessment must be a peculiar benefit derived by the property assessed.' " The

case of *In re Public Service Electric & Gas Co.*, 18 *N. J. Super.* 357 (*App. Div.* 1952), is cited, where the court said:

"Assessments as distinguished from other kinds of taxation, are those special and local impositions upon the property in the immediate vicinity of municipal improvements, which are necessary to pay for the improvement, and are laid with reference to the special benefit which the property is supposed to have derived therefrom. 14 *McQuillin, Municipal Corporations* (*3rd ed.*), *sec.* 38.01, *pp.* 11–15. The foundation of the power to lay a special assessment or a special tax for a local improvement of any character, whether it be opening, improving or paving a street or sidewalk or constructing a sewer, or cleaning or sprinkling a street, is the benefit which the object of the assessment or tax confers on the owner of the abutting property, or the owners of property in the assessment or special taxation district, which is different from the general benefit which the owners enjoy in common with the other inhabitants or citizens of the municipal corporation. Accordingly, it is now well settled in most jurisdictions that adjacent property may be specially assessed to defray, in whole or in part, the cost of local improvements by which such property is especially benefited. That doctrine, as stated, is based for its final reason on enhancement of values. That is to say, the whole theory of local taxation or assessments is that the improvements for which they are levied afford a remuneration in the way of benefits. Whether the property has been specially benefited by an improvement is generally regarded a question of fact, depending on the circumstances in each case, for the determination of the proper tribunal. The broad question is whether the general value of the property has been enhanced, not whether its present owner receives advantage. *McQuillin, supra.*"

And at *page 364* of 18 *N. J. Super.*:

"In determining whether property has been benefited, the question is whether the market value of the property has been increased by the improvement and it is not confined to benefits conferred for the particular use it is being devoted to at the time. In the absence of other proof, the commissioners' report is conclusive on the question of benefits. *State, N. J. Midland R. R. Co., pros. v. Jersey City,* 42 *N. J. L.* 97 (*Sup. Ct.* 1880). The burden of overcoming the presumption of validity is cast upon the owner and it must be by clear and cogent proof. *Morris v. City of Bayonne,* 53 *N. J. L.* 299 (*Sup. Ct.* 1891); *Ringer v. City of Paterson,* 98 *N. J. L.* 455 (*E. & A.* 1923); *Gorab v. Wood-Ridge,* 133 *N. J. L.* 162 (*Sup. Ct.* 1945)."

The term "benefit" is defined by the Appellate Division in the *Public Service* case, *supra,* 18 *N. J. Super.*, at *page 365*,

as being "* * * the increment of value to land affected by improvement. It represents the difference between the market value of the lands before the improvement and the market value of the land immediately after the improvement."

The expert witnesses for the plaintiffs exhibited knowledge of the area and values of the properties, experience in the area and, as previously stated, confined their evaluations to the enhancement in values of the particular properties. The expert testimony for the defendants was based, in the court's opinion, on a conclusion presented to them and a struggling by divers methods to support it. The court fails to find any believable support for the defendants' figures for increases of value.

The court finds that plaintiffs' proofs were not only clear and cogent but so convincing that there remains no way to support the assessments made by the defendants. The allocation of the costs of the improvement to the area of the lot has no relation to the increment of the value of land affected by the improvement. If the computation of such an increase of market value is truly represented by a computation on a front foot basis or an area basis, it would be accepted. Further, the particular use to which the lands are now devoted does not limit the determination of the benefits. But it is opposed to all reason to determine that two lots of land with a single ownership, on which a valuable home is now built and on the remainder of the parcel no further building will be permitted by present legislative regulations, can be considered as two parcels for the purpose of determining the increase of value. Treating it as a unit there can be but one sewer connection, and the utilization of the sewer improvement in relation to the property in question must have some relevancy on the question of increase of value. In most of the properties the location of the house prevents any further subdivision of the lands for building purposes, and this was one of the factors in fixing values by the plaintiffs' experts. Where

there were lands within the single ownership which are available for further sewer connections, these were given additional increases in value.

If there were no possible sewer connections to a property, then there could be no increase of value. By the same reasoning, any limitation of use of the sewer in relation to a property would also affect the amount of increase of value. This line of reasoning must be given some weight by the court in its finding as to what is the difference between the market value of the lands before the sewer improvement and the market value of the land after the improvement.

When the defendants' experts fall back on methods and formulas, which as to the plaintiffs' properties prove to be unreliable and illogical premises upon which to rely, the argument that in other cases they may prove to be reliable and trustworthy is no reason they should be determining in this case. This consideration takes into account the theory that "the presence or absence of a building makes no difference in the estimation of an assessment," and "the fundamental rule is to regulate the assessment in accordance with any use to which the property can legitimately be put."

These assessments were admittedly not made by the admission of the assessment authorities on the front foot basis but with a goal only of seeking a reimbursement of the costs by proportional allocation of the costs to the lots. The belated efforts by the experts to sustain that position by varied methods do not meet the tests of reliability and credibility by which all testimony must be weighed. The court observed and finds that the defendants' experts had little knowledge of the area in question, were not knowledgeable as to values of land in this municipality, and had little or no experience which would support their proofs. The defendants offered the testimony of three experts. Expert Nutter testified: "I did not take into account any particular advantage or benefit one property would have over another," but relied on so much per front foot. He had no sales experience in Wenonah and spent part of one

day in Wenonah. Expert Tunstall "did not evaluate advantages or disadvantages of any lot but only used front foot method." . Also, he testified "the value of land increases so many dollars per front foot irrespective of condition of land." Witness Orbacher attempted to support his increase of values on the square foot area method.

██ Plaintiffs also contend that the assessments should be set aside because all of the properties benefited were not assessed, naming Block 4, Lots 38, 41A and 42C on Plate 2 of the way. The evidence submitted was too meager to warrant such a finding, and there was no testimony showing to what extent these properties were benefited or if there was any increase in value of these properties as a result of the improvement. In the absence of sufficient proof the court dismisses this contention.

The original assessments by the board were not made on the basis of increase of value, and the presumption of validity would fail unless the experts' testimony supports the improperly devised values. The court finds that the values set by the defendants' experts cannot be sustained.

██ The only testimony upon which this court can rely is that offered by the plaintiffs' witnesses, and in reaching this conclusion the testimony of Vincent Faust is more comprehensive and reveals the opinion of a person of wide experience in the values of real estate in the subject area. His opinion of the increases in value of each property as a result of the improvement is adopted by the court as follows: $350 for each of the following parcels, P–5, Molter; P–6, Klinger; P–7, Cowe; P–8, Lee; P–9, Clark; P–10, Green; P–12, Trainer; P–13, Hindman; P–14, Schultz; P–15, Maddox, P–16, Jones; P–18, Barnes; P–19, Sunday; P–21, Morehouse; P–22, Vogel; P–24, Powell; and $700 for P–11, Carter; $700 for P–17, Galczinski; $1750 for P–20, Howarth; $700 for P–23, Geiger; and $325 for P–4, Parkinson.

The assessments will be so modified and judgment will be entered accordingly.