132 N.J. Super. 442 (1975)
334 A.2d 67
KATHLEEN McNALLY, ET ALS., PLAINTIFFS,
v.
TOWNSHIP OF TEANECK, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 17, 1975.
*447 Mr. Howard M. Kaplan for plaintiffs (Mr. Alan Marlowe on the brief).
Mr. Jacob Schneider for defendants (Messrs. Schneider, Schneider & Behr, attorneys; Mr. Michael Lubin on the brief).
PRESSLER, J.C.C., Temporarily Assigned.
Plaintiffs, owners of 49 single-family residential properties in the Township of Teaneck appeal, pursuant to N.J.S.A. 40:56-54, from the township's confirmation of assessments imposed against their properties to pay for a portion of the cost of improving the streets upon which their homes abut. The appeal raises important legal questions regarding defendant township's use of a front-foot formula for calculating the amount of the assessments.
The significant facts relating to the making of the challenged assessments, as proved at trial, are essentially undisputed. The township, pursuant to a bond ordinance duly adopted in March 1971, undertook, in part as a local improvement, a substantial street reconstruction project on a group of eleven streets in a residential neighborhood in the so-called West Englewood section of the municipality. The project consisted of five categories of street improvements: (1) storm sewer repair and replacement; (2) sanitary sewer repair and replacement; (3) curb replacements; (4) new curbing where required and (5) new street paving. Pursuant to the terms of the ordinance, the storm and sanitary sewer work and the curb replacement work were undertaken as general improvements. The new curbing and pavement work were undertaken as local improvements for which the benefitted property owners were to be specially assessed pursuant to N.J.S.A. 40:56-1 et seq.
*448 The project was duly undertaken and completed, and on April 17, 1973, and in compliance with the requirements of N.J.S.A. 40:56-24, the township adopted a resolution prepared by its engineering department reciting the satisfactory completion of the work, fixing for each of the 11 streets the actual construction cost for each of the five categories of work, and determining a separate overhead cost for all categories of work on each of the 11 streets. The total cost of the entire street improvement program, including overhead, was so certified to be $734,816.05. Of this amount, the local improvement costs were $331,280.72 plus overhead for street paving, and $12,104.95 plus overhead for new curbing cost. These costs were to be the subject of the special assessments. The township then, pursuant to the statute, transmitted this resolution of certification to the three assessment commissioners, appointed in accordance with N.J.S.A. 40:56-22, who then undertook the fixing of the assessments.
Two of the commissioners, Norman F. Sirianni and J. Jerome Case, testified at the trial. The pretrial deposition of the third commissioner, James R. Wynn, whose presence was not procurable at trial by reason of his nonresidency at that time, was admitted into evidence. The testimony of the three commissioners was in substantial agreement as to the manner in which the assessments were made. Their method was simply to calculate, based on municipal maps, the total front feet abutting each of the 11 improved streets and to divide the actual cost of the two local improvement categories for each street by that number of front feet in order to arrive at a front-foot unit cost. That unit cost was then multiplied by the number of front feet of each separate property and the product thus obtained, after application of a uniform overhead factor of 7%, was the figure reported as the assessment, except in the case of corner lots which abutted two improved streets. As to these, the assessment consisted of the unit cost multiplied by the number of front feet on that street, which was the postoffice address of the *449 property plus half of the unit cost multiplied by the front feet on what was then considered as the side street frontage.
It should be noted that the unit cost so arrived at both for paving and new curbing was not the same for each of the streets involved, and this for the reason, apparently, that the actual lineal foot charge of the contractor varied from street to street, although no reason for the variation, except in the case of Sussex Street, as indicated infra, was ever offered. As a result of the lineal foot cost variations, the repaving cost on a street-by-street basis ranged from a low of $9.87 to a high of $16.35 a lineal foot. Consequently, properties of equal frontage on different streets were disparately assessed despite the fact that the paving work on all streets except Sussex Street apparently produced reconstructed streets of the same specifications. It should be further noted that the properties so assessed vary substantially with respect to depth, size and shape.
Over 300 separate properties abutted the 11 improved streets in question, and the assessment made by the commissioners for each, in accordance with the front-foot method described above, was duly reported to the council after public hearing, as required by statute. By resolution adopted October 16, 1973 the township confirmed the assessments as reported, with two minor adjustments. One was the reduction of the lineal foot cost for the Sussex Road properties by $1.115, the council having found that all of the other streets had been paved for a depth of five inches whereas Sussex Road had been paved for a depth of six inches. This reduction was intended to reflect the extra inch of paving, thereby purporting to place the Sussex Road property owners on an equal basis with the owners abutting the other streets. The second adjustment was a reduction of one of the individual assessments, apparently on the basis that extra lineal feet had been calculated into that assessment. The owners of that property are not plaintiffs here.
The owners of the 49 properties, who are plaintiffs here, filed their action within 30 days of the confirmation date, *450 as required by statute,[1] claiming that the assessments were illegal, first, because the street improvement program did not confer any special benefit upon their properties at all, and second, that in the event there was some special benefit conferred which would justify a special assessment, the assessments were made so arbitrarily as not to represent a fair reflection of the dollar amount of any such benefit.
The determination of these contentions requires statement of the essential legal principles governing the making of assessments for local improvements. First, it is clear that the basis of the municipal power to make and collect a special assessment is the actual fact that the improvement which is the subject of the assessment confers upon the property owners assessed a special benefit by way of enhancement of the value of their properties beyond and in addition to that general benefit which may be enjoyed by all of the property owners and residents of the municipality. Hence, it is a matter of constitutional imperative that the amount of the assessment be calculated in relation to the value of the special benefit and that it not exceed that value. See In re Public Service Elec. and Gas Co., 18 N.J. Super. 357, 363 (App. Div. 1952); Ridgewood Country Club v. Paramus, 55 N.J. 62, 68 (1969); Jardine v. Rumson, 30 N.J. Super. 509, 519 (App. Div. 1954); McQueen v. West New York, 56 N.J. 18, 23-24 (1970); Howorth v. Wenonah, 67 N.J. Super. 161, 165 (Law Div. 1961). And see, N.Y. and G.L. Ry. Co. v. Kearney, 55 N.J.L. 463, 470 (Sup. Ct. 1893), which held unconstitutional an assessment statute which did not require that the amount of the assessment reflect the special benefit but rather simply dictated assessment of properties abutting the improvement in proportion to its expense.
*451 To ensure compliance with this judicially articulated constitutional prerequisite to the municipal power to specially assess, the statute, N.J.S.A. 40:56-26, places upon the commissioners the obligation to "make a just and equitable assessment of the benefit conferred upon any real estate by reason of such improvement having due regard to the rights and interests of all persons concerned, as well as the value of the real estate benefited." They are further enjoined to levy the assessment "as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value which the respective lots and parcels of real estate shall be deemed to have received by reasons of such improvement." N.J.S.A. 40:56-27.
It is also clear that special benefit in this context has a well-settled meaning. Special benefit is the actual increase in the value of the property which results from the local improvement or, more particularly stated, the difference in the fair market value immediately before and immediately after the making of the improvement. This definition of special benefit is not only currently accepted, see, e.g., McQueen v. West New York, supra, but has also been recognized in our jurisprudence on this subject for at least the last 50 years; see, e.g., In re South Orange, 2 N.J. Misc. 867, 869 (Circ. Ct. 1927), and In re Mulberry Street, Newark, 11 N.J. Misc. 295, 303 (Circ. Ct. 1933). Thus, the task of the commissioners is to devise and implement a method of determining the assessment which is reasonably calculated both to reflect the before and after value of the benefited property and to fairly apportion the burden of payment for the improvement among all the affected property owners. In performing this task the cost of the improvement has relevance  it is not, however, both as a matter of constitutional requirement and statutory mandate, dispositive as the commissioners here seemed to think. That is to say, the cost of the improvement constitutes a ceiling on the total assessments, so that even if the total dollar amount of the special benefits *452 exceeds the improvement cost, the total assessments cannot exceed that cost and will be, consequently, less than the enhancement value. On the other hand, if the cost of the improvement exceeds its enhancement value, the amount of the assessment cannot exceed the enhancement and the municipality must itself pay the difference between the cost and the assessment. This is the express provision of N.J.S.A. 40:56-24, which thereby recognizes the economic reality that cost and enhancement are not equal, equatable or interchangeable concepts. Thus an assessment calculation method, such as the front-foot formula here employed, which is exclusively dependent upon the cost of the improvement and is obviously designed primarily to recoup for the municipality the cost of the improvement on a simplistic mathematical basis, prima facie fails to meet the statutory requirements unless the commissioners have made an initial determination, first, that the total cost does not exceed the total enhancement value, and second, that the formula fairly apportions the burden among all the property owners in accordance with their respective benefits.
Counsel for the township urges that the use of such a cost-related front-foot formula as that here employed where street improvements are involved is a judicially approved and longstanding basis for calculating assessments, and hence that there is nothing either exceptional or objectionable about its use here. The front-foot formula method may be unexceptional and in current usage by municipalities. This court, however, cannot agree that its use is therefore unobjectionable. The front-foot formula method has been deprecated as a matter of ancient precedent in this State. Thus, the former Supreme Court, 120 years ago, in considering such a formula held that:
A mere calculation of the proportion of the sum allowed to the contractor, * * * to each lot according to its size, which is all the commissioners did, was a very different thing from the assessment they were appointed to make. They were required to be, and doubtless were, impartial, disinterested men, and were sworn faithfully, *453 honestly and impartially to perform the duties required of them, not merely that they might verify a calculation of the city surveyor or any other officer, but that they might ascertain the actual expenses incurred, by examining into the whole matter, and by information derived from the documents and other sources; and determine the proportion thereof that ought to be assessed to each parcel or lot according to the actual benefit received by such parcel or lot in the same manner. [State v. Jersey City Mayor and Common Council, 24 N.J.L. 662, 667-668 (Sup. Ct. 1855)]
And five years later, and even more to the point, that court, in invalidating a group of front-foot assessments for street improvement, was moved to observe that:
To make a mere calculation on such a basis would not require the services of three judicious disinterested persons, sworn faithfully, honestly, and impartially to perform their duties. Any clerk or school-boy with a little knowledge of arithmetic could do that.
The assessment so made is not to be taken as the exercise of the discretion and judgment of the commissioners and a determination of the benefits. The mode of the operation excludes that idea, and their report shows that all were charged alike without discrimination. It is not an assessment in proportion to the benefits received. [State v. City of Hudson, 29 N.J.L. 115, 116-117 (Sup. Ct. 1860)]
It is true that throughout the ensuing years the front-foot method, presumably because of the case of its application and its convenience to municipalities, gained some measure of respectability. It is critical, however, to note that no court in this jurisdiction has ever approved its use without the basic qualification that there be a factual correlation between the result of the formula and the actual benefit conferred. Indeed, and ironically, the history of even qualified judicial approval of the method begins with the observation that "the mere fact that an assessment laid on property peculiarly benefited in proportion to benefits, and limited thereto, corresponds with area or frontage, will not overturn such assessment." State, New Brunswick Rubber Co., pros. v. Com'rs of Streets and Services, 38 N.J.L. 190, 195 (Sup. Ct. 1875). From this statement it was but a short step to the inversely stated and frequently reiterated principle that "[t]he mere fact that in making the assessment, the commissioners *454 have paid considerable regard to frontage, will not invalidate the assessment if they have been guided by the principle of apportioning the expense according to the benefits." State, Kohler, pros. v. Guttenberg, 38 N.J.L. 419, 422 (Sup. Ct. 1876) (emphasis supplied). And see, e.g., Righter v. Newark, 45 N.J.L. 104, 108 (Sup. Ct. 1882) ("At any rate, a frontage assessment is not necessarily involved * * *"); Raymond v. Rutherford, 55 N.J.L. 441, 448 (Sup. Ct. 1893), aff'd p.c. 56 N.J.L. 340 (E. & A. 1893) ("The principle of frontage assessment is not necessarily wrong. If that mode properly distributes the benefits among the owners of property benefited, there can be no objection to its use."); Moran v. Jersey City, 58 N.J.L. 144, 147 (Sup. Ct. 1895), aff'd p.c. 58 N.J.L. 653 (E. & A. 1896) ("There can be no objection to frontage assessment when it properly distributes the benefits among the owners benefited."); Thompson v. East Orange, 94 N.J.L. 106, 109 (E. & A. 1919) ("We do not think that the foot frontage rule was adopted here to the exclusion of benefits received. As an element indicating benefit, the frontage theory, when not made the exclusive theory, will not condemn an assessment."); Wilson v. Ocean City, 11 N.J. Misc. 325, 326, 165 A. 880 (Sup. Ct. 1933), aff'd o.b. 112 N.J.L. 97 (E. & A. 1933) ("The law is settled that an assessment on a frontage basis will not be set aside if that basis appears to be a fair test for the estimation of benefits.") The courts have, furthermore, been prompt to invalidate frontage assessments when not related to actual benefit. See, e.g., State, Simmons, pros. v. Passaic, 42 N.J.L. 463 (Sup. Ct. 1880); N.Y. and G.L. Ry. Co. v. Kearney, 55 N.J.L. 463 (Sup. Ct. 1893); Lehigh Valley R.R. Co. v. Jersey City, 81 N.J.L. 290 (Sup. Ct. 1911); Bradley v. Asbury Park, 87 N.J.L. 293 (E. & A. 1914); Carton v. Neptune City, 16 N.J. Misc. 5, 196 A. 672 Cir. Ct. 1937); Howorth v. Wenonah, 67 N.J. Super. 161, 167, 169 (Law Div. 1961).
*455 Even if it be assumed that the front-foot method, which is typically based exclusively on cost factors, ever really produces a fair approximation of the increase in market value of the benefitted property resulting from the improvement (a proposition which this court seriously doubts), the question then is whether or not the plaintiffs here have proved by clear and convincing evidence[2] first, that in making the challenged frontage assessments, the commissioners were not guided by the principle of fairly apportioning the burden among the property owners in proportion to the benefits received by them and second, that under the circumstances here, the frontage formula was not a fair test of the benefit. Considering all of the proofs, this court is satisfied that plaintiffs have borne their burden.
This conclusion is compelled by the commissioners' testimony and that of the township's expert witness.
Sirianni, the chairman of the commission, testified that after tentatively calculating the assessment by use of the formula in the manner heretofore described, the commissioners did in fact visually "inspect" each street to assure themselves, first, that the work was done, and second, that all of property owners had thereby received a benefit exceeding the proposed assessment. The commissioners unanimously agreed, he said, that with respect to each property there was a benefit in excess of the assessment so calculated. Each commissioner based this conclusion on his own "judgment," without consulting any sales or other market data, without *456 attempting to place a dollar amount on the benefit received, without attempting to make a determination of either the before or after market value of the property, without appraisals, without consulting real estate experts (none of the commissioners did in fact have any particular expertise in real estate evaluation), and indeed without any expressed factual support of any kind other than the cost figures themselves.
Case's testimony was substantially the same, also making clear that as to each property he made the entirely subjective judgment that there was a benefit which exceeded the formula result. He also testified that the proposed assessment was made first and then the visual inspection was conducted to make sure that the proposed assessment did not exceed the benefit. After the commissioners had performed their individual visual inspections, he went on, they met again and agreed in every case that the benefit exceeded the cost and hence reported to the council the assessments precisely as proposed before the inspection. Both commissioners considered to some degree the fact that the property owners had also gotten the benefit of the storm and sanitary sewer work and, in some cases, curb replacement for which they had not been charged as that was done under the ordinance as a general improvement.
The pretrial deposition of Wynn was essentially the same. He, however, was apparently of the opinion that the cost assessed to each owner was necessarily less than the benefit since if each owner had individually contracted to have the portion of the street in front of his property paved, he would have paid a higher cost than his front-foot proportional share of the total job. None of the commissioners, it should be noted, were able to explain the varying unit prices on each street or to relate the variation to benefit other than in cost terms.
Based on this testimony, it is clear that the commissioners were actually relying exclusively on cost factors. This court is satisfied that a completely subjective impression *457 that an assessment does not exceed the benefit cannot constitute compliance with the demands of N.J.S.A. 40:56-26 and 40:56-27, particularly where that subjective impression is gained only after the assessment has been, in effect, predetermined and is sought only for the purpose of checking it out before it is made final. Clearly, the commissioners' procedure failed to consider the value of the real estate benefitted, as required by N.J.S.A. 40:56-26, except in the vaguest and most subjective manner. And N.J.S.A. 40:56-27, as noted, requires that the assessment be made both in proportion to and not in excess of the benefit. The commissioners made no apparent attempt to comply with the proportional requirement, apparently believing that they had only to deal with the non-excess requirement. Finally, the commissioners here made no apparent attempt to determine whether use of the front-foot formula fairly or proportionately apportioned the burden among the assessed property owners.
That the commissioners' method was not only not calculated to produce assessments related to and proportional to the benefit but that it also actually failed to produce such assessments is made clear by the testimony of the township's expert real estate witness, Joseph W. Burek, who was peculiarly familiar with the properties in question, having been involved in the mass appraisal of all properties in the township for purposes of a municipal reassessment made shortly before the local improvement here involved was commenced. Based on his knowledge of the property values in the township thus acquired, on his personal inspection of the properties involved and by reference to available market data, he testified as to the fair market value of each property both before and after the improvement was made. The difference, of course, was the benefit he ascribed as resulting from the improvement. This court accepts Burek's testimony as reliable, fair, and as correct as such opinion testimony can be. That testimony has been summarized on the table annexed as an appendix hereto, which compiles for each of the 49 properties *458 here involved the assessment, Burek's opinion of both the before-improvement value and the difference between the before and after value (i.e., the benefit), and the court's calculation of the percentage relationship between the assessment and the benefit and between the assessment and the before value. As that chart shows, the assessments range from a low of 23.17% to a high of 258.72% of the benefit. Eighteen assessments, more than one-third of those here challenged, exceed the benefit. Although one would expect that each property would probably have approximately the same percentage of increment in value as a result of the street improvement, cf. McQueen v. West New York, supra, the assessments range from .89% to 6.36% of the before-improvement value, a differential of over 700%.
The assessments of the 18 properties which exceed the enhancement value obviously cannot stand. The township argues, among other things, that the other 31 must be affirmed since, as a matter of law, a property owner has no cause for complaint as long as his own assessment does not exceed the benefit. That argument, first, misconstrues the case law on which it relies. A property owner was always able to challenge his assessment on the basis of the inadequacy of other assessments if that inadequacy reulted in his assessment being too high and hence his burden too great. See, e.g., Hills v. Rahway, 29 N.J. Super. 16, 24 (App. Div. 1953); In re Mulberry Street, Newark, supra; 301-302; Schlapfer v. Town of Union, 53 N.J.L. 67, 68 (Sup. Ct. 1890). More significantly, the township's position ignores the statutory mandate for just, fair and proportional assessments. Nor can the grossly disparate percentage of their respective benefit which the owners of these 31 properties are being called upon to pay be justified on any other basis. The philosophical and constitutional foundations of the now classic statements of Switz v. Middletown Tp., 23 N.J. 580 (1957), and In re Appeal of Kents, Inc., 34 N.J. 21 (1961), demanding equality of treatment of property owners with respect to general assessments, have no less *459 force with respect to local assessments. Local government in this State demands a great deal, both in financial support and in civic responsibility, from its property owners and residents. The least it owes in return is scrupulous fairness in the manner in which it apportions fiscal burdens. The inequity of the placing of the fiscal burden here is self-evident. It is not enough for the township to say that the assessment does not exceed the benefit. The burden must be proportionately placed as well. Here it was not. Hence none of these assessments can stand.
This court does not intend to suggest that the before and after market value appraisal, the "classical and perfect method", is the only acceptable basis for determining the special benefit. See McQueen v. West New York, supra 56 N.J. at 24, which approved a method based upon ascertaining a percentage by which the improvement increased the before-improvement value of the property. The court does, however, intend to make clear that in order for the assessment to bear the necessary nexus to the benefit, the actual benefit must be determined on some rational, factually supported basis, and the cost then distributed in accordance therewith. Cost alone cannot itself constitute the basis of the assessment, and a front-foot formula exclusively dependent on a cost basis is improper.
The court is aware that N.J.S.A. 40:56-54 ordinarily requires that if the attack on the assessment is sustained, the court shall correct the assessment. This provision does not preclude the court, however, in appropriate circumstances, from remanding to the municipality for its reassessment. See, e.g., Ridgewood Country Club v. Paramus, supra 55 N.J. at 70-71. Because the assessment method here employed was based on what this court believes to have been a basic misunderstanding of essential constitutional and statutory requirements, because of the number of properties involved, and because of the various alternative methods which are available for properly making these assessments based on the data already at hand, it is clearly *460 more appropriate for the municipality, guided by the principles here stated, to completely reassess these properties by devising a rational method of determining benefits and apportioning costs than for the court to do so.
The determinations here made inevitably raise questions regarding the viability of the unappealed assessments of the properties involved in this street improvement project. The effect of this decision on those assessments has not been directly raised by any of the parties to this action although, since they were identically made, they clearly suffer from the same defect and would assuredly demonstrate the same fatal disparities as those which were appealed from. N.J.S.A. 40:56-55 authorizes the municipality to correct assessments by resolution even where no appeal has been taken where is manifest error, and it would appear to be a matter of essential fairness for the township to include all properties in its reassessment and to "correct" the unappealed assessments in the manner provided by the statute. Cf. Lehigh Valley R.R. Co. v. Jersey City, supra.
The final matter to be dealt with is plaintiffs' contention that there should be no assessments at all for the reason that the street improvement program conferred no special benefits on their properties. Their expert witness so testified, stating that the repaving added no increment to market value for the reasons that the special assessment constituted a municipal lien, that the increased speed of traffic to be anticipated on the improved streets was an inevitable and undesirable result of the project, that marketability was not increased by new streets and that curbing does not affect market value. The court, however, is not satisfied either that his opinion or his factual basis therefor (a small group of resales) constitutes evidence, either by a preponderance or clearly and convincingly, that there was no enhancement resulting from the project. On the contrary, the court is satisfied from Burek's testimony and that of the commissioners that the market values were enhanced and some special benefit enjoyed by these properties.
*461 The assessments appealed from are accordingly vacated and the matter remanded to the township for its reassessment.

*462 APPENDIX

Plaintiff Assessment[1a] Assessment[1a] Total[1a]
 for Paving for Curbing Assessment
---------------------------------------------------------------------------
Kathleen McNally $3031.18 $ 534.69 $3565.87
Theodore Anker 1606.13 - 1606.13
Shirley Berman 1396.10 230.35 1626.45
George & Madeleine
 Brecher 2625.60 478.99 3104.59
Arthur & Linda Brisman 2316.84 - 2316.84
Arthur & Hermine Bogin 635.39 - 635.39
Herman Brown 1069.18 119.88 1189.06
Thomas & Joanne Burns 695.87 - 695.87
Frank & Sue Carden 635.39 - 635.39
Michael & Louise Comas 2000.88 - 2000.88
Richard & Elyse
 Constantin 811.84 - 811.84
Edward Dresher 2045.93 - 2045.93
Robert & Betty Dodd 811.84 - 811.84
Barry & Patricia Evertz 635.39 - 635.39
Helen Francis 2023.90 - 2023.90
Leon & Henrietta
 Goldenberg 1052.61 - 1052.61
Erwin Goldman 1158.42 - 1158.42
Vidalino & Dolly
 Gonzalez 927.82 - 927.82
Arnold & Marilyn Grisman 1304.60 232.04 1536.64
Agnes Halajian 909.40 - 909.40
William & Anne Hansen 2780.20 - 2780.20
Miriam Harris 529.50 - 529.50
Alvan Harrison 927.82 - 927.82
Ira & Elaine Herr 2174.17 - 2174.17
Marion Herzog 852.57 - 852.57
Monroe & Sarah Hurwitz 2105.23 - 2105.23
Janet Johnston 635.39 - 635.39
Karl V. Jones, Jr. 909.40 - 909.40
Anton & Pauline Julig 1058.98 - 1058.98
Howard & Carole Kaplan 794.24 - 794.24
Lawrence & Ruth Kessler 1270.78 - 1270.78
Mel & Rhoda Kaiser 847.19 - 847.19
Paul & Meri Kestin 1773.52 - 1773.52
Arie Kirschenbaum 695.87 - 695.87
David & Miriam Krakow 635.39 - 635.39
Peter & Anne Kurz 1791.94 - 1791.94
David & Lenore Levy 909.40 - 909.40
Stanley & Rita Marcus 1158.42 - 1158.42
Lawrence & Elinor Lewis 1482.58 - 1482.58
Ronald & Florette Lynn 682.05 - 682.05
Dave & Leah Newman 688.35 - 688.35
John & Judy Murphy 1058.98 - 1058.98
Thomas A. Payne 1400.69 - 1400.69
Robert & Barbara
 Richardson 2045.93 - 2045.93
Gerald & Janice Rosen 909.40 - 909.40
Leonard Rothstein 635.39 - 635.39
Robert Sahagian 927.82 - 927.82
Charlotte Scarbrough 682.05 - 682.05
Leon & Gladys Schwartz 1565.83 - 1565.83
 Before[2a]
Plaintiff Assessment %[3] Improvement
 Enhancement[2a] of Enhancement Value
---------------------------------------------------------------------------
Kathleen McNally $1500.00 237.72 $57,000
Theodore Anker 1500.00 107.08 78,500
Shirley Berman 1200.00 135.58 58,800
George & Madeleine
 Brecher 1200.00 258.72 48,800
Arthur & Linda Brisman 5000.00 46.34 135,000
Arthur & Hermine Bogin 1000.00 63.54 43,000
Herman Brown 2000.00 59.45 44,000
Thomas & Joanne Burns 1000.00 69.59 42,500
Frank & Sue Carden 1000.00 63.54 39,000
Michael & Louise Comas 1500.00 133.39 42,000
Richard & Elyse
 Constantin 1000.00 81.18 48,000
Edward Dresher 1500.00 136.40 54,500
Robert & Betty Dodd 1000.00 81.18 41,000
Barry & Patricia Evertz 1500.00 42.36 39,500
Helen Francis 1500.00 134.93 61,000
Leon & Henrietta
 Goldenberg 1000.00 105.26 55,000
Erwin Goldman 2000.00 57.92 83,000
Vidalino & Dolly
 Gonzalez 2000.00 46.39 57,000
Arnold & Marilyn
 Grisman 1000.00 153.66 42,000
Agnes Halajian 1000.00 90.94 48,000
William & Anne Hansen 1200.00 231.68 -
Miriam Harris 1000.00 52.95 57,000
Alvan Harrison 1000.00 92.78 48,000
Ira & Elaine Herr 1000.00 217.42 44,000
Marion Herzog 1000.00 85.26 69,000
Monroe & Sarah Hurwitz 1500.00 140.35 68,500
Janet Johnston 1000.00 63.54 43,000
Karl V. Jones, Jr. 1000.00 90.94 45,000
Anton & Pauline Julig 1000.00 105.90 44,000
Howard & Carole Kaplan 1000.00 79.42 44,000
Lawrence & Ruth Kessler 2000.00 63.53 52,000
Mel & Rhoda Kaiser 1000.00 84.72 48,000
Paul & Meri Kestin 1000.00 177.35 91,000
Arie Kirschenbaum - -
David & Miriam Krakow 1000.00 63.54 47,000
Peter & Anne Kurz 1200.00 149.33 -
David & Lenore Levy 1000.00 90.94 48,000
Stanley & Rita Marcus 5000.00 23.17 130,000
Lawrence & Elinor Lewis 3000.00 49.42 49,000
Ronald & Florette Lynn 1000.00 68.21 36,500
Dave & Leah Newman 1000.00 68.84 57,000
John & Judy Murphy 1500.00 70.60 47,500
Thomas A. Payne 1000.00 140.01 41,000
Robert & Barbara
 Richardson 1500.00 136.40 45,500
Gerald & Janice Rosen 1000.00 90.94 45,000
Leonard Rothstein 1000.00 63.54 42,000
Robert Sahagian 1000.00 92.78 48,000
Charlotte Scarbrough 1000.00 68.21 39,000
Leon & Gladys Schwartz 1000.00 156.58 44,000
 Assessment %
Plaintiff of Before Improvement
 Value
-------------------------------------------------
Kathleen McNally 6.26
Theodore Anker 2.05
Shirley Berman 2.77
George & Madeleine
 Brecher 6.36
Arthur & Linda Brisman 1.72
Arthur & Hermine Bogin 1.48
Herman Brown 2.71
Thomas & Joanne Burns 1.64
Frank & Sue Carden 1.63
Michael & Louise Comas 4.76
Richard & Elyse
 Constantin 1.69
Edward Dresher 3.75
Robert & Betty Dodd 1.98
Barry & Patricia Evertz 1.61
Helen Francis 3.32
Leon & Henrietta
 Goldenberg 1.92
Erwin Goldman 1.40
Vidalino & Dolly
 Gonzalez 1.63
Arnold & Marilyn Grisman 3.66
Agnes Halajian 1.90
William & Anne Hansen -
Miriam Harris 0.93
Alvan Harrison 1.93
Ira & Elaine Herr 4.94
Marion Herzog 1.28
Monroe & Sarah Hurwitz 3.07
Janet Johnston 1.48
Karl V. Jones, Jr. 2.02
Anton & Pauline Julig 2.41
Howard & Carole Kaplan 1.81
Lawrence & Ruth Kessler 2.44
Mel & Rhoda Kaiser 1.77
Paul & Meri Kestin 1.95
Arie Kirschenbaum -
David & Miriam Krakow 1.35
Peter & Anne Kurz -
David & Lenore Levy 1.90
Stanley & Rita Marcus 0.89
Lawrence & Elinor Lewis 3.03
Ronald & Florette Lynn 1.87
Dave & Leah Newman 1.21
John & Judy Murphy 2.23
Thomas A. Payne 3.42
Robert & Barbara
 Richardson 4.50
Gerald & Janice Rosen 2.02
Leonard Rothstein 1.51
Robert Sahagian 1.93
Charlotte Scarbrough 1.75
Leon & Gladys Schwartz 3.56

*463
 Assessment Assessment Total
Plaintiff for Paving for Curbing Assessment
---------------------------------------------------------------------------
Ira & Sara Schafer $ 966.24 - $ 966.24
Louis Schwartz 1923.10 - 1923.10
Jane Smith 695.87 - 695.87
Hilda Stein 579.89 - 579.89
Martin Solomon 635.39 - 635.39
Fred & Helen Uetz 1391.73 - 1391.73
Arthur & Grace Urrows 635.39 - 635.39
Warren & Barbara
 Van Slyke 1791.94 - 1791.94
Rabbi Bernard & Hindi
 Walfish 811.84 - 811.84
Harold & Sally Warsawer 1773.52 - 1773.52
Robert & Augusta Weaver -
William & Brenda Weiss 635.39 - 635.39
Jesse & Edna Woolley 864.12 - 864.12
Kenneth & Asuncion Yip 1136.76 - 1136.76
Albert & Martha Zander 682.05 - 682.05
Herman & Helen Zier 2023.90 - 2023.90
Leo & Rose Zimmerman 635.39 - 635.39
Morton & Paulette Zisk 2126.09 - 2126.09
Estate of Myra Hacker 3017.49 536.26 3553.75
Fred & Roslyn Lichtman 811.84 - 811.84
Stanley & Joan Hollander 635.39 - 635.39
Wallace & Rosemary
 Littman 682.05 - 682.05
Bruce & Rochelle Fried 682.05 - 682.05
Pred & Ada Mae Stein 635.39 - 635.39
Pai Hwa & Minda King 635.39 - 635.39
 Before
 Assessment % of Improvement
Plaintiff Enhancement Enhancement Value
----------------------------------------------------------------------------
Ira & Sara Schafer $1000.00 96.62 44,000
Louis Schwartz 2000.00 96.15 54,000
Jane Smith 1500.00 46.39 41,000
Hilda Stein 2000.00 29.00 66,000
Martin Solomon 1000.00 63.54 41,000
Fred & Helen Uetz 2000.00 63.59 51,000
Arthur & Grace Urrows 1000.00 63.54 44,000
Warren & Barbara
 Van Slyke 2000.00 89.60 51,000
Rabbi Bernard & Hindi
 Walfish 1000.00 81.18 45,000
Harold & Sally Warsawer 1000.00 177.35 46,000
Robert & Augusta Weaver 1000.00 - 64,000
William & Brenda Weiss 1000.00 63.54 42,000
Jesse & Edna Woolley 1000.00 86.41 48,000
Kenneth & Asuncion Yip 1500.00 75.78 63,500
Albert & Martha Zander 1000.00 68.20 41,000
Herman & Helen Zier 2000.00 101.20 60,000
Leo & Rose Zimmerman 1000.00 63.54 41,000
Morton & Paulette Zisk 1500.00 141.74 53,500
Estate of Myra Hacker 2000.00 177.69 77,000
Fred & Roslyn Lichtman 1000.00 81.18 49,000
Stanley & Joan Hollander 1000.00 63.54 40,000
Wallace & Rosemary
 Littman 1000.00 68.20 38,000
Bruce & Rochelle Fried 1000.00 68.20 37,000
Fred & Ada Mae Stein 1000.00 63.54 41,000
Pai Hwa & Minda King 1000.00 63.54 67,000
 Assessment %
Plaintiff of Before Improvement
 Value
-----------------------------------------------
Ira & Sara Schafer 2.20
Louis Schwartz 3.56
Jane Smith 1.70
Hilda Stein 0.88
Martin Solomon 1.55
Fred & Helen Uetz 2.73
Arthur & Grace Urrows 1.44
Warren & Barbara
 Van Slyke 3.51
Rabbi Bernard & Hindi
 Walfish 1.81
Harold & Sally Warsawer 3.86
Robert & Augusta Weaver -
William & Brenda Weiss 1.52
Jesse & Edna Woolley 1.80
Kenneth & Asuncion Yip 1.79
Albert & Martha Zander 1.66
Herman & Helen Zier 3.37
Leo & Rose Zimmerman 1.55
Morton & Paulette Zisk 3.97
Estate of Myra Hacker 4.62
Fred & Roslyn Lichtman 1.66
Stanley & Joan Hollander 1.59
Wallace & Rosemary
 Littman 1.80
Bruce & Rochelle Fried 1.84
Pred & Ada Mae Stein 1.55
Pai Hwa & Minda King 0.95

NOTES
[1] The owners of the remaining some 275 properties have not challenged their assessments although they were made in precisely the same manner as those here under attack.
[2] The plaintiff's burden of proof has been variously stated as by a "clear preponderance," "clear proof of great force," "clear and cogent," "cogent," "clear and convincing." See, e.g., State, Pudney, pros. v. Village of Passaic, 37 N.J.L. 65, 67 (Sup. Ct. 1877), aff'd o.b. 40 N.J.L. 615 (E. & A. 1878); In re Public Service Elec. and Gas Co., 18 N.J. Super. 357, 364 (App. Div. 1952); Davis v. Newark, 54 N.J.L. 144, 147 (Sup. Ct. 1891); Maplewood v. Smith, 112 N.J.L. 233, 237 (E. & A. 1933). These are clearly semantical rather than substantive differences. The correct statement of the burden is proof "by clear and convincing evidence." See Evid. R. 1(4).
[1a] D-2
[2a] Testimony of Defendant's expert
[3] Court's calculation